UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN P. STEWART,

    Plaintiff,

v.                                              Case No. 8:19-cv-1309-T-33CPT

SHERIFF RICK WELLS and
DEPUTY HERIBERTO ADORNO,

    Defendants.
_____/

## REPORT AND RECCOMMENDATION

Before me on referral is the *Defendants' Verified Motion to Tax Costs* (Doc. 120) and the Plaintiff's response in opposition (Doc. 122). For the reasons discussed below, I respectfully recommend that the Defendants' motion be granted in part and denied in part.

I.

Plaintiff John P. Stewart initiated this action in May 2019 against Manatee County Sheriff Rick Wells and Manatee County Sheriff's Office Deputy Heriberto Adorno (collectively, Defendants) based on a series of incidents that occurred at the Manatee County Jail while Stewart was incarcerated there. (Doc. 1). In his operative complaint filed in December 2019, Stewart alleged various federal and state law causes of action, including claims against Wells and Adorno pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (ADA), as well

as a claim against Wells under the Rehabilitation Act, 29 U.S.C. §§ 791, 794. (Doc. 32).

In early August 2020, the Court granted the Defendants' motion for summary judgment as to all of Stewart's claims (Docs. 87, 88, 118), and the Clerk entered judgment in the Defendants' favor shortly thereafter (Doc. 119). By way of the instant motion, the Defendants now seek an award of costs as the prevailing party in the amount of $2,517.68, plus interest from the date of the Court's August 2020 Order. (Doc. 120).

II.

Federal Rule of Civil Procedure 54(d)(1) states that "costs—other than attorney's fees—should be allowed to the prevailing party" unless a federal statute, federal rule, or court order provides otherwise. The Eleventh Circuit has construed this provision as creating a presumption in favor of awarding costs to the prevailing party. *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (per curiam) (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991)).[1] Because the Defendants were granted summary judgment on all of Stewart's claims, they are the prevailing parties here and are entitled to recover costs. *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1012 (11th Cir. 2001) ("Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of [R]ule 54(d).") (quoting *Head v. Medford*, 62 F.3d 351, 354 (11th Cir.

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

1995) (per curiam)). Stewart does not meaningfully argue otherwise. *See* (Docs. 120, at 3, 6; 122, at 1)

The costs to be awarded under Rule 54 are generally limited to those authorized by 28 U.S.C. § 1920. *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)). The fees and expenses permitted under section 1920 consist of the following: (1) fees of the clerk and the marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation for court-appointed experts and interpreter services. 28 U.S.C. § 1920(1)–(6).

The party seeking taxation bears the burden of proving entitlement to the costs enumerated in section 1920. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994) (per curiam). On appeal, a district court's decision to award costs will not be overturned unless it constitutes an abuse of discretion. *Henderson v. Franklin*, 782 F. App'x 866, 873–74 (11th Cir. 2019) (citing *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007)).

The costs the Defendants seek here are comprised of $1,691.30 spent on deposition transcripts, as well as $826.38 expended on copying and printing. (Doc. 120, 120-2, 120-3). In support of this request, the Defendants submit a Bill of Costs, along with several invoices and a list of itemized expenses. *Id*.

Section 1920 authorizes the award of court reporter costs for deposition transcripts and copying costs if the transcripts and copies at issue were necessary for use in the case. 28 U.S.C. §§ 1920(2), (4). The copying costs covered under section 1920 include those sustained in connection with reproducing discovery, pleadings, correspondence, exhibits, and documents provided to opposing counsel and the court. *Desisto College, Inc. v. Town of Howey-in-the-Hills*, 718 F. Supp. 906, 913 (M.D. Fla. 1989), *overruled on other grounds by EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000).

Stewart does not dispute that the Defendants' requested costs are covered under section 1920. Indeed, he does not raise any objection to the invoices, valuation, or classes of costs the Defendants seek to recover. (Doc. 120-1, at 1). Instead, Stewart asks that the Court deny the Defendants' motion because (1) this lawsuit involved the litigation of civil rights and was of great public importance; (2) there is a great disparity in wealth and power between Stewart and the Defendants; and (3) he is indigent. (Doc. 122). While Stewart's third contention has some merit, his other two arguments fail.

Stewart's first argument is largely based on the Ninth Circuit's opinion in *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572 (9th Cir. 2000) (en banc). In that case, a class of minority educators sued the State of California and the California Commission on Teacher Credentialing, challenging the use of the California Basic Educational Skills Test as a requirement for teaching certification and employment with the California public schools. *Id.* at 577–79. Although the defendants prevailed

in the action, the Court of Appeals upheld the district court's decision denying the defendants' application for costs on the grounds that the litigation involved "issues of the gravest public importance," which affected "tens of thousands of Californians and the state's public school system as whole." *Id.* at 593.

Attempting to analogize this case to *Mexican-Am. Educators*, Stewart asserts that his lawsuit is a "civil rights action" involving a number of issues of great consequence, such as the denial of "healthcare accommodations" and "retaliatory, harmful and unfair treatment by [the D]efendants." (Doc. 122 at 2–3). Stewart also adds that this year marks the thirtieth anniversary of the ADA and points to what he characterizes as the "vast social movement for criminal justice reform" that is currently taking place in the United States. *Id.* at 3.

The problem with Stewart's argument is that, even if the Eleventh Circuit were to adopt the Ninth Circuit's "initial premise" in *Mexican-Am. Educators*, Stewart fails to establish why this action is of such broad public significance "beyond the obvious importance" it has to him. *Valdez v. Miami-Dade Cty.*, 2020 WL 6140472, at *2 (S.D. Fla.), *adopted*, 2020 WL 6114879 (S.D. Fla. July 16, 2020). As explained in *Valdez*,

> That is not to say of course that the [issues raised here] are not important or substantial. One could say that about most of the [civil rights] cases filed in our District. But that feature of this type of litigation does not merit ignoring statutory rights that Defendant[s] ha[ve] in this case, as limited as they are.

2020 WL 6140472, at *2; *see also AFL-CIO v. Browning*, 2008 WL 11399710, at *2–3 (S.D. Fla. June 5, 2008) (noting the strong presumption in the Eleventh Circuit in favor

5

of awarding costs to the prevailing party in rejecting the plaintiffs' request to deny costs on the grounds that their voting rights lawsuit was of great public importance).

Stewart's contention that the Court should deny the Defendants' request for costs because of the great disparity in wealth and power between the parties is likewise without merit. As the Defendants correctly note, the Eleventh Circuit has rejected this argument. *See Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000) ("[W]hen awarding costs a district court should not consider the relative wealth of the parties. Comparing the financial resources of the parties would unduly prejudice parties with assets and undermine 'the presumption that Rule 54(d)(1) creates in prevailing parties' favor, and . . . the foundation of the legal system that justice is administered to all equally, regardless of wealth or status.'") (citations omitted).

Stewart's final argument is more persuasive. While the Court may not take into account the parties' relative wealth and power, it may, "but need not, consider" a losing party's financial status in potentially reducing the amount of costs to be granted to the prevailing party. *Chapman*, 229 F.3d at 1039; *Rodriguez v. Miami-Dade Cty.*, 2019 WL 1901594, at *5 (M.D. Fla. Apr. 29, 2019). The court's discretion in this regard, however, is limited insofar as it is prohibited from "declin[ing] to award any costs at all." *Chapman*, 229 F.3d at 1039 (citation omitted); *Jenner v. Bank of Am. Corp.*, 304 F. App'x 857, 860 (11th Cir. 2006) (per curiam) ("Although a district court does not have to consider the financial status of a non-prevailing party in its award of costs, if it does so, the court 'may not decline to award costs at all.'") (citation omitted).

6

In the end, the party seeking a reduction in costs based on indigency bears the burden of providing "substantial documentation" that demonstrates a "true inability to pay." *Chapman*, 229 F.3d at 1039 (citations omitted); *Rodriguez*, 2019 WL 1901594, at *5; *Brown v. U.S. Dep't of Agric.*, 2008 WL 203382, at *1 (M.D. Fla. Jan. 23, 2008) (same). If, after reviewing that documentation, a court elects to reduce the full costs sought by the prevailing party, it "must have and state a sound basis for doing so." *Chapman*, 229 F.3d at 1039 (citations omitted).

Here, Stewart offers an affidavit that he is a sixty-percent disabled Marine veteran[2] and that he receives only approximately $1,200 in monthly disability benefits from the Department of Veterans Affairs (VA), all of which he uses to "provide support and full-time caretaking for [his] minor daughter" in a home that he and the child's mother rent. (Doc. 122-1). Stewart further attests that he does not own a vehicle or any real estate, has no savings, and has several debts he is unable to pay. *Id.*

Although Stewart does not detail his expenses or debts in his affidavit, he attaches a January 10, 2020, "Application for Criminal Indigent Status" (Application) he submitted to the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, in which he represented that his total liabilities and debts exceeded $20,000 and that he had only $3.00 in the bank. *Id.*[3] The Manatee County Clerk executed a

---

[2] Stewart asserts that he is "currently under consideration for a higher disability rating." (Doc. 122-1).

[3] Stewart notes in his affidavit that his "indigency status is the same now as it was earlier this year" when he completed the Application. (Doc 122-1).

7

form on the same day stating that she did not find any vehicles registered to Stewart or any property listed in his name in Manatee County. *Id*.

In light of Stewart's affidavit and supporting documentation, I find it appropriate to reduce the taxable costs he must pay to the Defendants by fifty percent. Several considerations inform my conclusion. To begin, courts considering cost awards against parties who are disabled and subsisting on government benefits "have frequently taken into account the parties' reliance on . . . disability payments, lack of employment, and indigent status in determining the cost award and ordered a significant reduction." *C.M.J. ex rel. D.L.J. v. Walt Disney Parks & Resorts US, Inc.*, 2017 WL 3065111, at *7 (M.D. Fla. July 19, 2017) (collecting cases). Furthermore, while the Defendants maintain that Stewart is "physically able to work" (Doc. 120 at 4 n.2), the record reveals that he is at least sixty-percent disabled (as determined by the VA), has only minimal income, is significantly in debt, possesses no assets or property, and is responsible for the care of a minor. *See Rodriguez*, 2019 WL 1901594, at *5 (reducing taxable costs by fifty percent on the grounds that the plaintiff was unemployed, had lost her savings, had significant expenses, and only received child support and food stamps); *C.M.J. ex rel. D.L.J*, 2017 WL 3065111, at *7–8 (determining a fifty percent reduction in taxable costs was appropriate where the plaintiffs had no assets or income other than modest social security benefits); *Brown*, 2008 WL 203382, at *1 (granting the plaintiffs' request to reduce costs by fifty percent based on their financial status); *Jessup v. Miami-Dade Cty.*, 2011 WL 294417, at *2 (S.D. Fla. Jan. 27, 2011) (reducing costs by forty-five percent because of the non-prevailing party's indigency and inability

to pay). Halving the taxable costs to be awarded in this case results in a figure of $1,258.84.

Turning to the issue of interest, it is well settled that "[w]hen a district court taxes costs against a losing party [under Rule 54(d)], the award of costs bears interest from the date of the original judgment." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994) (quoting *Georgia Ass'n of Retarded Children v. McDaniel*, 855 F.2d 794, 799 (11th Cir. 1988)) (quotation marks omitted). The prevailing view in the Eleventh Circuit is that the "date of the original judgment" is the date on which the prevailing party became entitled to the costs, rather than the date on which the court (or the clerk) quantified the award of costs. *See, e.g.*, *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 803 (11th Cir. 2012) (per curiam); *Taylor Indus. Constr., Inc. v. Westfield Ins. Co.*, 2020 WL 1873595, at *11 (M.D. Fla. Apr. 15, 2020); *Sanford v. Omni Hotels Mgmt. Corp.*, 2020 WL 5260191, at *19 (M.D. Fla. Aug. 19, 2020); *Pierre v. Intuitive Surgical, Inc.*, 2020 WL 6265953, at *4 (S.D. Fla. Aug. 24, 2020); *Adams v. Paradise Cruise Line Operator Ltd.*, 2020 WL 4904195, at *1 (S.D. Fla. Aug. 20, 2020); *Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1332 (S.D. Fla. 2015). *But see Powell v. Carey Int'l, Inc.*, 528 F. Supp. 2d 1351, 1364 (S.D. Fla. 2008) (taking the opposite view).[4] As for the rate of interest to be employed, under 28 U.S.C. § 1961,

---

[4] The court in *Powell* noted the Eleventh Circuit's decision in *McDaniel* appeared to indicate that interest on a cost award accrues from the date on which the costs are awarded, not the date on which the party "prevailed." 528 F. Supp. 2d at 1364. This conclusion, however, is contrary to the authority on which *McDaniel* is based. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544–45 (5th Cir. 1983) ("If, as in the usual course, the amount of costs is later determined by the clerk, interest will nonetheless run from the date of the judgment

that rate should equate "to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).[5]

Against this backdrop, I find that the Defendants are entitled to interest on their cost award at the rate of 0.13%, which is the weekly average one-year Treasury constant maturity yield as of the last day of the calendar week prior to the Court's August 2020 Order (i.e., July 31, 2020). *See Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1339 (S.D. Fla. 2009).

### III.

For the reasons set forth above, I recommend that the Court grant in part and deny in part *Defendants' Verified Motion to Tax Costs* (Doc. 12) and that the Court award the Defendants $1,258.84 in costs plus post-judgment interest at an annualized rate of 0.13%.

Respectfully submitted this 1st day of December 2020.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

---

allowing costs either expressly or by legal implication."), *overruled on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1195 (5th Cir. 1986).

[5] The Administrative Office of the United States Courts publishes this interest rate at https://www.uscourts.gov/services-forms/fees/post-judgment-interest-rate.

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Virginia M. Hernandez Covington, Senior United States District Judge
Counsel of record